IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **XINGSHAO LI,**<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,**<br><br>　　　　　　　　Defendants. | Civil Action No.: 25-cv-14343 |

## COMPLAINT

Plaintiff Xingshao Li ("Plaintiff") hereby sues the Individuals, Partnerships, and Unincorporated Associations as delineated on Schedule A hereto ("Defendants"), alleging as follows:

### INTRODUCTION

1. This action has been filed by Plaintiff to combat the e-commerce stores who trade upon Plaintiff's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products, mainly including [REDACTED], using infringing versions of Plaintiff's federally registered patent [REDACTED] (the "Infringing Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringing operation.

1

2. Plaintiff is forced to file this action to combat Defendants' infringement of its federally registered patent as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3. Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, loss of reputation, price erosion, consumer confusion, and loss of exclusivity in its valuable patent rights as a result of Defendants' actions and seeks injunctive and monetary relief.

## PARTIES

4. Plaintiff is an independent product designer and entrepreneur based in Guangzhou, China.

5. Since 2015, Plaintiff has been dedicated to the innovative design and commercialization of [REDACTED]. Leveraging his personal design philosophy and hands-on experience, Plaintiff has launched multiple original products that combine creativity with practicality. Plaintiff's core belief is to make [REDACTED] simpler, more enjoyable, and filled with love, aiming to provide high-quality [REDACTED] solutions to consumers worldwide.

6. Plaintiff seeks to become a leading innovator in [REDACTED] design by consistently delivering safe, reliable, and creative products to the global market.

7. Plaintiff's designs cover a wide range of products including [REDACTED]. Each product is developed based on real market demand, balancing functionality and aesthetic appeal to meet the needs of both [REDACTED].

8. Plaintiff is the inventor, applicant, and owner of United States Patent No. [REDACTED] entitled "[REDACTED]" (hereinafter "Patent-in-Suit"). The U.S. registration for the Patent-in-Suit is valid, subsisting, and in full force and effect. *See* Exhibit A.

9. The Patent-in-Suit comprises the ornamental design for a [REDACTED], as seen below:

| **Patent-in-Suit** |
|:---:|
| [REDACTED] |

10. Plaintiff's products protected by the Patent-in-Suit cater to [REDACTED], while also meeting the needs of the gift-giving market, demonstrating wide consumer applicability.

11. Plaintiff has built an integrated R&D, manufacturing, and cross-border e-commerce system. Plaintiff's products, including the products protected by the Patent-in-Suit, are sold worldwide through [REDACTED].

12. Plaintiff continuously invests resources in product development, brand building, advertising, and product optimization. Plaintiff places a strong emphasis on intellectual property protection and actively monitors and combats market infringement.

13. From 2016 to 2025, Plaintiff's original product designs have achieved outstanding performance in global markets, with annual sales growing from $300,000 to $5 million, showcasing Plaintiff's ability to innovate and capture market acceptance.

14. In [REDACTED], Plaintiff completed the design of [REDACTED] embodied in the Patent-in-Suit and filed for design patent protection in the U.S., EU, and UK on [REDACTED]. The product officially launched on [REDACTED], under [REDACTED].

15. Plaintiff's products protected by the Patent-in-Suit was inspired by [REDACTED]. To accommodate [REDACTED], Plaintiff adopted a [REDACTED].

16. The [REDACTED] used in Plaintiff's Patent-in-Suit product meets [REDACTED].

17. Plaintiff has expended substantial time, money, and energy in the pre-launch of products protected by the Patent-in-Suit. Product research, positioning, design, [REDACTED], testing,

patent application, etc., required an investment of approximately $15,500 and about 45 days of work.

18. Plaintiff's products protected by the Patent-in-Suit quickly won market recognition due to its excellent performance, user-friendly and innovative design, novel limitations, and high-quality user experience. Plaintiff's products protected by the Patent-in-Suit have been widely popular and quickly occupied a leading position in the field.

19. Upon initial launch, Plaintiff's products protected by the Patent-in-Suit achieved "New Release #1" badge. Multiple buyers posted promotional videos on social media generating strong traffic.

20. Plaintiff's products protected by the Patent-in-Suit have become recognized by consumers as high quality products sourced from Plaintiff.

21. The initial sales of products protected by the Patent-in-Suit include about $15,000.00 in August 2024 and $22,000.00 in September 2024. With no direct competitors in the market, Plaintiff's projected Q4 monthly sales totaled $70,000.00 - $80,000.00. During the peak season, sales will increase by about four times (search activity is high during the year-end sales peak season).

22. However, based on the Patent-in-Suit's unique design, novel limitations, and market popularity, Plaintiff became aware of multiple sellers on various online platforms who also started to sell products virtually identical to the claimed Patent-in-Suit. As such, Plaintiff filed this action to combat these Seller Aliases listed on Schedule A who are harming Plaintiff by offering to sell, selling, and shipping unlicensed products that infringe the Patent-in-Suit.

23. Numerous infringing products appeared in the marketplace – believed to be originating from unauthorized manufacturers on China's 1688 wholesale platform. Defendants are in direct

4

competition with Plaintiff for Patent-in-Suit products in the same or similar channels of trade. These infringing goods copy – in a virtually identical manner – Plaintiff's Patent-in-Suit design, even misappropriating Plaintiff's original product images and usage photos for sales.

24. Plaintiff has suffered significant loss in market share for Patent-in-Suit products, price erosion, reputation and good will, and correspondingly, Plaintiff has experienced a steep decline in sales and loss of future sales.

25. The monthly sales of Patent-in-Suit products dropped to around $10,000.00 from October 2024 onward. The average order value fell, and the profit margin dropped from 45% to 10%.

26. Plaintiff also incurred additional advertising and air freight costs to compete with Defendants' infringement operation, totaling about $4,000.00 or more in advertising and $5,000.00- $8,300 or more in air freight costs.

27. Plaintiff's estimated direct financial losses due to Defendants is projected to be over $500,000.00. The infringing sales by Defendants across different platforms are estimated to reach several million dollars.

28. This infringing behavior by Defendants severely impact Plaintiff's patent rights and undermines the fair competition environment in the market. The sales of Plaintiff's products protected by the Patent-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded.

29. The infringing behavior of these Seller Aliases has diminished Plaintiff's patent rights and resulted in loss of exclusivity. Plaintiff has not been able to realize the return of investment in the products protected by the Patent-in-Suit.

30. Plaintiff has lost profit, market share, sales volume, marketplace rankings and visibility, control over the rights in the claimed invention, reputation, associated goodwill, and ability to exploit the protected invention.

31. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Patent-in-Suit.

32. Plaintiff filed this action to combat these Seller Aliases' "swarm of attacks" on the Patent-in-Suit because filing individual causes of action against each infringer ignores the form of harm Plaintiff faces.

33. Defendants are partnerships, individuals, and/or unincorporated associations operating as fictitious seller aliases on online platforms who target sales to Illinois residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). *See* Exhibit C.

34. Defendants target Illinois consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship (and in many cases – have indeed sold and shipped) Infringing Products to the United States, including Illinois. *See* Exhibit B.

35. Based on the seller alias names and research of Defendants, Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. As a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). *See* Exhibit C.

36. A search of Defendants' fictitious addresses, if available, via Google does not return the same fictitious seller alias name, respectively, nor any other reliable, correlated entity. *See* Exhibit C.

37. Defendants' interactive sites are in English and accept U.S. Dollars. *See* Exhibit B.

38. Defendants operate one or more e-commerce stores under seller aliases listed in Schedule A. Through fictitious seller aliases and the anonymity allowed by marketplace platforms, Defendants purposely conceal their true identity and the full scope of their operations. *See* Exhibit C.

39. Defendants have the opportunity to operate under a proper individual, partnership, or entity name, but Defendants willfully choose to operate under fictitious seller aliases.

## DEFENDANTS' INFRINGING CONDUCT

40. While the seller aliases (or Defendants) alone may appear as some small-time infringers, the actions of Defendants are of enormous detriment and coordinated.

41. The infringement empire Defendants participate in and take advantage of is a $500+ **Billion** Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* **Exhibit E**):



42. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

7

43. "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit E**, Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id*. at 39.

44. Based on the limited information available and Google research, Defendants engaged in fraudulent conduct when registering the seller aliases by providing false, misleading and/or incomplete information to e-commerce platform(s) to prevent discovery of their true identity, location, and/or the scope of their e-commerce operations. *See generally* Exhibit C.

45. Defendants have the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

46. Defendants sell, offer for sale, distribute, and advertise Infringing Products.

47. Representative samples of Defendants' Infringing Products is as follows:

| Patent-in-Suit | Representative Sample of Defendants' Infringing Products |
|---|---|
| [REDACTED] | [REDACTED] |

48. As depicted above, all Defendants offer to sell and/or sell virtually identical – if not the exact same – Infringing Products. *See generally* Exhibit B.

8

49. As seen above, the e-commerce stores operating under the seller aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of Patent-in-Suit products.

50. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies as Plaintiff. For example, Defendants facilitate sales by designing the e-commerce store(s) operating under the seller aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized Patent-in-Suit products. *See* Exhibit B.

51. Defendants use fictitious name(s) to keep selling despite Plaintiff's actions.

52. Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

53. Joinder of Defendants is proper because Defendants' illicit actions arise out of the same transaction, occurrence, or series of transactions or occurrences. Alternatively, Plaintiff asserts any right to relief against Defendants for the infringement of the Patent-in-Suit jointly or severally.

54. Even though Defendants operate under multiple fictitious Seller Aliases, the e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship, such as templates with common design elements that intentionally omit any contact information, the same registration patterns, the same accepted payment methods, the same check-out methods, the same keywords and titles, the same or similar product descriptions, the same

advertising tactics, the same or similar images and videos, similarities in pricing and quantities, and/or the same incorrect grammar and misspellings.

55. Defendants all offer to sell and/or sell virtually identical – if not the exact same – Infringing Products - establishing a logical relationship.

56. Defendants are involved in, review, and/or are in communication with one another via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases - further establishing a logical relationship amongst Defendants.

57. Defendants' Infringing Products appear identical and manufactured by and come from a common source - further establishing a logical relationship amongst Defendants.

58. Defendants, in a virtually identical manner, attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious seller aliases and providing no further, credible identifying information - further establishing a logical relationship amongst Defendants. *See* Exhibit C.

59. Defendants, in a virtually identical manner, utilizes the same channels of trade, in the same time period, with the same Infringing Products - further establishing a logical relationship amongst Defendants.

60. Defendants take advantage of a set of circumstances - the anonymity and mass reach the internet affords - to sell Infringing Products under aliases, all from across international borders - further establishing a logical relationship amongst Defendants.

61. Defendants understand that their ability to profit through fictitious internet stores is enhanced as the number of aliases increase, even though each alias may not all engage in direct communication or coordination - further establishing a logical relationship amongst Defendants.

62. Questions of fact common to all Defendants will arise inherently do to their relatedness and/or logical relationship, identical anonymous nature and foreign status – requiring the same methods to investigate, uncover, and collect evidence about infringing activity, based upon Defendants' same Infringing Products – requiring the same legal and factual infringement analysis and damage consideration. *See* Exhibits B-C.

63. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, advertise, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences.

64. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill and reputation associated with the Patent-in-Suit and the destruction of the legitimate market sector in which it operates.

65. Defendants' use of the Patent-in-Suit in connection with the advertising, distribution, offering for sale, and sale of Infringing Products, including the sale of Infringing Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

66. Defendants' infringement of the Patent-in-Suit has caused significant financial loss to Plaintiff.

67. Defendants will continue to advertise, sell, and offer for sale products Infringing Products unless preliminarily and permanently enjoined.

**JURISDICTION AND VENUE**

68. This is an action for infringement of the Patent-in-Suit arising under 35 U.S.C. §§ 271(a), 281, and 284 – 85. This Court has original subject matter jurisdiction over this claim under 28 U.S.C. §1331 and §1338.

69. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Illinois, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing and able to, and upon information and belief, and based on test purchases from numerous Defendants, sell and ship Infringing Products to residents within the Northern District of Illinois. *See* Exhibit B. As a result, Defendants have purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their patent infringement activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of advertising, offering to sell, selling, and/or shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

70. Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive internet stores through which Illinois residents can, and upon information and belief, and based on test purchases from numerous Defendants, have, purchased Infringing Products. Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in United States Dollars, are in English, and have sold and shipped Infringing Products to Illinois residents.

71. Defendants are systematically directing or targeting their business activities at consumers in the United States, including Illinois, through at least the Internet platforms under the Seller

Aliases, through which consumers in the United States, including Illinois, can and do view Defendants' Infringing Product listing, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Illinois. *See* Exhibit B. Despite being from a foreign nation, Defendants' e-commerce stores are made to confuse consumers that they and/or their products originate in the United States, and the stores are in English and accept USD. *See* Exhibit B. The level of interactivity is high, where consumers of Illinois can: communicate to Defendants about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Illinois addresses. Defendants, through their fictitious Seller Aliases, utilize online marketplace platforms for the sole purpose of conducting business transactions, as described above. The Internet webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Illinois.

72. Alternatively, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Infringing Product listings and based on the Seller Aliases being of foreign origin, Defendants are foreign entities, individuals, or unincorporated associations not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

73. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, advertising, and shipping the Infringing Products to this District.

74. Based on information found on Defendants' Infringing Product listings and based on the Seller Aliases themselves, Defendants are foreign entities or individuals, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

75. Further, venue is proper in this district under 28 U.S.C. § 1400 because Defendants are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

## COUNT I
## INFRINGEMENT OF PLAINTIFF'S PATENT-IN-SUIT

76. Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

77. Plaintiff is the true and correct owner of the Patent-in-Suit. *See* Exhibit A.

78. Defendants, directly or through intermediaries, offer to sell, sell, and ship products which infringe the Patent-in-Suit in the United States. *See* Exhibit B.

79. Defendants are making, using, offering for sale, selling, and importing into the United States, and Illinois, for subsequent sale or use, Infringing Products that infringe directly and/or indirectly infringe the Patent-in-Suit. *See* Exhibit B.

80. Defendants are directly infringing, literally infringing, and/or infringing the Patent-in-Suit under the doctrine of equivalents. *See* Exhibit B.

81. Defendants have been and are now actively infringing the claim of the Patent-in-Suit in the State of Illinois, in this judicial district, and other jurisdictions in the United States by selling and offering to sell the infringing Patent-in-Suit products.

82. Defendants' offering for sale, sale, and shipment of Infringing Products has caused and continues to cause Plaintiff to suffer irreparable harm through loss of Plaintiff's exclusive patent rights, loss of market share, price erosion, loss of future profits, loss of reputation, and inability to realize a return on investment.

83. Defendants' offering for sale, sale, and shipment of Infringing Products into the United States, and Illinois, was willful in nature based upon the dated history of the Patent-in-Suit, Defendants' actual or constructive knowledge of the Patent-in-Suit, the significant popularity of the Plaintiff's Patent-in-Suit products, and the anonymous nature of Defendants.

84. Upon information and belief, Defendants had actual or constructive knowledge of Plaintiff and/or the Patent-in-Suit before and/or during Defendants' advertising, offering for sale, and sale of Infringing Products.

85. Upon information and belief, Defendants' conduct as alleged herein was willful, reckless, and/or with knowledge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a. Entry of temporary, preliminary and permanent injunctions pursuant to 35 U.S.C. § 283, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from

manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Infringing Products.

    b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale, and/or sale of Infringing Products.

    c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu,Walmart.com, and wish.com, permanently remove any and all listings offering for sale Infringing Products via the e-commerce stores operating under the Seller IDs, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell Infringing Products.

    d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

    e. Entry of an Order awarding Plaintiff damages adequate to compensate for the infringement of its patent, but in no event less than a reasonable royalty for the use made of the invention by

16

the Defendants, together with interest and costs as fixed by the Court pursuant to 35 U.S.C. § 284 and that the award be trebled as provided for under 35 U.S.C. §284. Alternatively, at Plaintiff's election, Entry of an Order awarding Plaintiff all profits realized by Defendants from Defendants' infringement of the Patent-in-Suit, pursuant to 35 U.S.C. § 289.

f. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs as provided by for under 35 U.S.C. § 285.

g. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

h. Entry of an award of pre- and post-judgment interest on the judgment amount.

i. Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED November 24, 2025				Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*